UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
RONIT D. APPEL,

                Plaintiff,                                            **COMPLAINT**

            -against-                                          **JURY TRIAL DEMANDED**

HON. ESTHER HAYUT, YOSEF MEIR COHEN,
HON. YAEL ANTEBI-SHARON, MEIR AMIR COHEN,     **DOCUMENT**
DAVID KAZHDAN, ALISA RUBIN PELED,                     **ELECTRONICALLY**
DR. KENNETH DAVIS, and DR. DAVID REICH,            **FILED**

                Defendants.

------------------------------------------------------------------------x

       Plaintiff Ronit D. Appel, an attorney representing herself, complaining of defendants Hon. Esther Hayut, Yosef Meir Cohen, Hon. Yael Antebi-Sharon, Meir Amir Cohen, David Kazhdan, Alisa Rubin Peled, Dr. Kenneth Davis, and Dr. David Reich alleges as follows:

## PARTIES

1. Plaintiff **Ronit D. Appel** (hereinafter: "**Ms. Appel**") is a natural person residing in Jerusalem, Israel and currently obtaining refuge at the home of her father, Norman Appel, M.D., in New York, NY. Ms. Appel, who holds dual United States and Israeli citizenship, is an attorney duly admitted to practice law in Israel and New York who recently exposed massive well-documented corruption of the Supreme Court of the State of Israel. Ms. Appel holds a law degree and a B.A. in

Government, both with honors, from the world-renowned Interdisciplinary Center Herzliya, where she was a member of Law Review and an Argov Fellow in Leadership and Diplomacy. As discussed herein, since first exposing massive corruption of the Supreme Court of the State of Israel on June 11, 2020, Ms. Appel has been the victim of assassination attempts as well as cyber terrorism, including, *inter alia*, terrifying implicit cyber threats regarding the imminent murder of Ms. Appel and close family members of hers, all of which were carried out, upon information and belief, by the Mossad, Israel's international intelligence agency, acting on behalf of the State of Israel. As discussed herein, each of the defendants herein is, upon information and belief, involved in the attempted extrajudicial killing of Ms. Appel and in the infliction of torture on Ms. Appel.

2.  Defendant **Hon. Esther Hayut** is a natural person residing, upon information and belief, in Tel Aviv, Israel and the Chief Justice of the Supreme Court of the State of Israel. Upon information and belief, Hon. Esther Hayut gave the Mossad an order to assassinate Ms. Appel immediately after Ms. Appel first publicly exposed documented massive corruption of the Supreme Court of the State of Israel on June 11, 2020.

3.  Defendant **Yosef Meir Cohen** is a natural person residing in the State of Israel and the Director of the Mossad, the national intelligence agency of the State of Israel. Upon information and belief, the assassination attempts and the cyber terrorism against Ms. Appel, as well as other torture carried out, were carried out

by the Mossad with the knowledge of, and upon the instruction of, its Director, defendant Yosef Meir Cohen.

4. Defendant **Hon. Yael Antebi-Sharon** is a natural person residing in the State of Israel and the Senior Supervisor of the Registration of Land in Jerusalem. Upon information and belief, defendant Antebi-Sharon is working together with the Mossad in its infliction of torture on Ms. Appel and in its attempts to assassinate Ms. Appel by, among other things, implicitly threatening Ms. Appel with the loss of her home and her personal belongings in Israel if she does not return to Israel immediately where she will, upon information and belief, be murdered by the State of Israel.

5. Defendant **Meir Amir Cohen** is a natural person residing in the State of Israel. Upon information and belief, Meir Amir Cohen, who presents himself as an attorney, is a convicted money launderer who was sentenced in the past to prison in a decision upheld by the Supreme Court of the State of Israel in Meir Cohen (represented by Meir Amir Cohen, Adv.) v. State of Israel, Criminal Appeal No. 3395/06. Upon information and belief, Meir Amir Cohen is working with the Mossad and/or aiding and abetting the Mossad in its infliction of torture on Ms. Appel and in its attempts to assassinate Ms. Appel by, among other things, implicitly threatening Ms. Appel with the loss of her home and her personal belongings in Israel if she does not return to Israel immediately, where she will, upon information and belief, be murdered by the State of Israel.

6. Defendant **David Kazhdan** is a natural person residing in the State of Israel. David Kazhdan is a world-famous mathematician who is a 2020 co-winner of a 1.2 million-dollar Shaw Prize. In 2020, David Kazhdan obtained title to his late mother's apartment, located right underneath Ms. Appel's Jerusalem apartment, by fraudulently dissolving his mother's estate without probating her will. On January 27, 2020, he produced, through his lawyer, a non-certified copy of a United States will that was represented to be his mother's will, in order for him and his wife to be substituted as plaintiffs in the judicial proceeding against Ms. Appel discussed *infra*. Then, weeks later David Kazhdan made a request to obtain an Inheritance Order from the Jerusalem Inheritance Registrar while fraudulently representing that his mother left behind no will. The Inheritance Order was granted within weeks and sole title to his mother's Jerusalem apartment was very shortly thereafter transferred to him. He later, through his lawyer, admitted in writing to the aforementioned crime he committed with respect to his mother's estate. Upon information and belief, David Kazhdan is working with and/or aiding and abetting the Mossad in its infliction of torture on Ms. Appel and in its attempts to assassinate Ms. Appel by, among other things, implicitly threatening Ms. Appel with the loss of her home and her personal belongings in Israel if she does not return to Israel immediately, where she will, upon information and belief, be murdered by the State of Israel.

7. Defendant **Alisa Rubin Peled** is a faculty member at the world-renowned Interdisciplinary Center Herzliya, Ms. Appel's alma mater, and the head of the

4

school's highly prestigious Argov Fellows Program in Leadership and Diplomacy, of which Ms. Appel is a graduate. Upon information and belief, defendant Rubin Peled works for the Mossad and carried out acts of torture against Ms. Appel, including widely spreading false rumors that Ms. Appel is suicidal and/or mentally ill in order to discredit Ms. Appel and to facilitate a murder of Ms. Appel by the Mossad that would be framed to appear as a suicide. Upon information and belief, after Ms. Appel exposed massive corruption of the Supreme Court of the State of Israel, defendant Rubin Peled befriended Ms. Appel's youngest brother on Facebook and communicated with him in an attempt to discredit Ms. Appel and gain information about Ms. Appel and her family for the purpose of inflicting harm on Ms. Appel and her family. Upon information and belief, in an attempt to cover up her association with the Mossad and her involvement in the Mossad's torture of Ms. Appel and its assassination attempts, defendant Rubin Peled sent Ms. Appel, on June 29, 2020, a fraudulent request to commission a painting by Ms. Appel, who is a professional artist, for IDC Herzliya. Ms. Appel discovered the fraudulent nature of the commission request when, on June 30, 2020, defendant Rubin Peled sent Ms. Appel a message addressed to someone else, from which it became very apparent that the commission request was a fraudulent one.

8. Defendant **Dr. Kenneth Davis** is a natural person residing, upon information and belief, in or near New York, New York. Defendant Davis is President and Chief Executive Officer of the Mount Sinai Health System. Upon information and belief, Dr. Kenneth Davis, as discussed herein, aided and abetted the Mossad in its

5

infliction of torture on Ms. Appel and in its assassination plot by facilitating the provision of false information to Ms. Appel by the Mount Sinai Health System regarding what was, upon information and belief, an attempted assassination attack on her by Mossad operatives driving in a fake Mount Sinai Hospital van who came to Ms. Appel's father's home on June 30, 2020.

9. Defendant Dr. David Reich is a natural person residing, upon information and belief, in or near New York, New York and President and Chief Operating Officer of the Mount Sinai Hospital. Upon information and belief, Dr. David Reich, as discussed herein, aided and abetted the Mossad in its infliction of torture on Ms. Appel and in its assassination plot by facilitating the provision of false information to Ms. Appel by the Mount Sinai Health System regarding what was, upon information and belief, an attempted assassination attack on her by Mossad operatives driving in a fake Mount Sinai Hospital van who came to Ms. Appel's father's home on June 30, 2020.

## JURISDICTION AND VENUE

10. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because this action arises under the Torture Victim Protection Act of 1991, codified at 28 U.S.C. § 1350 note (hereinafter: "**the Torture Victim Protection Act**").

11. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in New York, NY.

## FACTUAL ALLEGATIONS

12. On June 11, 2020, Ms. Appel first exposed massive documented corruption of the Supreme Court of the State of Israel, which was followed immediately or almost immediately by the assassination attempts, cyber terrorism against Ms. Appel, including cyber threats against her and family members of hers, and other torture inflicted on Ms. Appel all, upon information and belief, carried out by the Mossad, acting on behalf of the State of Israel, with, upon information and belief, the involvement of each of the defendants to this action, as discussed herein.

### The Corruption of the Supreme Court of the State of Israel, the Attempted Extrajudicial Killing of Ms. Appel, and the Torture of Ms. Appel

13. Defendant David Kazhdan is one of two plaintiffs in a fraudulent Israeli judicial proceeding (hereinafter: "**the Lawsuit**") commenced against Ms. Appel in Israel in October of 2019 by David Kazhdan's late mother and a neighbor. Upon information and belief, the filing of the Lawsuit was planned by David Kazhdan and his son Eli Kazhdan with the intention of fraudulently securing a very significant judgment against Ms. Appel which would force her to sell her penthouse apartment in Jerusalem so that it could be purchased by David Kazhdan, who is now the registered owner of his later mother's apartment, located one floor below Ms. Appel's apartment which, as discussed herein, he obtained title to in 2020 after fraudulently dissolving his mother estate without probating her will.

14. The Lawsuit, which was originally filed on behalf of David Kazhdan's mother and another neighbor, was filed by their "attorney", defendant Meir Amir Cohen who, upon information and belief, is a convicted money launderer who was

7

sentenced in the past to prison, as discussed *supra*. The Lawsuit, which alleges, *inter alia*, the existence of leaks and dampness in the two apartments underneath Ms. Appel's apartment was based in its entirety on the fraudulent report of an "engineer." Ms. Appel later discovered that the author of the report, who was presented in the complaint as an engineer, is in fact not an engineer at all but, rather, a criminal who falsely presents himself as an engineer in judicial proceedings and who is operating on behalf of a fictitious company. The plaintiffs in the Lawsuit, together with their "attorney", and with the assistance and cooperation of the Senior Supervisor of the Registration of Land in Jerusalem, defendant Hon. Yael Antebi-Sharon, who is the judicial official presiding over the proceeding, engaged in many crimes in order to criminally extort money from Ms. Appel herein and to criminally obtain control over her Jerusalem apartment.

15. On June 2, 2020 (June 3, 2020 on Israel time), Ms. Appel made a motion seeking that defendant Antebi-Sharon recuse herself immediately from presiding over the Lawsuit in light of severe corruption of hers in said proceeding. The motion included, among other claims, a claim that defendant Antebi-Sharon had forged a note and a signature on said note in order to cover up corruption she committed in the Lawsuit. In a decision dated June 3, 2020, defendant Antebi-Sharon did not deny the claims made in the motion and declined to decide the motion.

16. On June 8, 2020, Ms. Appel filed an appeal of said decision of defendant Antebi-Sharon with the Supreme Court of the State of Israel. The Supreme Court engaged in criminal activity in order to not adjudicate the appeal and, ultimately,

on August 5, 2020, the court dismissed Ms. Appel's appeal without adjudicating it, on the grounds that Ms. Appel had never paid the court fee, had not deposited a bond as required, and had not responded to the court's prior decision regarding its intention to dismiss her appeal because she did not pay the court fee or deposit a bond as required. In truth, Ms. Appel had made repeated attempts to pay the court fee but the court prevented her from paying the fee; Ms. Appel never received, to this day, the court's notice regarding the requirement to deposit a bond and the details of the bond; and Ms. Appel did in fact submit a response to the court's prior decision regarding its intention to dismiss her appeal. Despite notifying the court repeatedly prior to the dismissal of her appeal that it had not sent her the voucher to pay the court fee or any information regarding the bond she was required to deposit, the court chose not to allow Ms. Appel to pay the court fee and not to send her any information regarding the bond she was required to deposit and instead chose to summarily dismiss her appeal without adjudicating it, all while committing severe crimes.

17. On June 11, 2020, Ms. Appel first became aware of massive corruption committed by the Supreme Court with respect to her appeal filed on June 8, 2020.

18. On June 11, 2020, immediately upon learning of the Supreme Court's corruption, Ms. Appel publicly exposed the corruption in public posts on her Facebook and LinkedIn accounts. Within hours of publicly exposing the Supreme Court's corruption, a hit team ambushed Ms. Appel on the Upper West Side of

Manhattan, as Ms. Appel returned from a trip to the supermarket. Ms. Appel escaped.

19. Just days later, on June 16, 2020, a driver intentionally tried to run Ms. Appel over on West 80th Street, near Riverside Drive.

20. Beginning on or about June 17, 2020, Ms. Appel was victimized by an onslaught of cyber terrorism, which included, *inter alia*, terrifying implicit threats regarding the imminent murder of Ms. Appel and family members of hers.

21. Another method of torture that was, upon information and belief, employed by the Mossad is the spreading of false rumors that Ms. Appel is suicidal and/or mentally ill, in order to discredit Ms. Appel's claims of judicial corruption in Israel and to facilitate a murder of Ms. Appel that would be framed to appear as a suicide. Upon information and belief, on or about June 19, 2020, defendant Alisa Rubin Peled, who, upon information and belief is a Mossad operative, widely spread false rumors among Ms. Appel's family, former classmates, and/or other IDC graduates, that Ms. Appel is suicidal and/or mentally ill, with the purpose of discrediting Ms. Appel and facilitating a murder that would be framed to appear as a suicide.

22. On June 20, 2020, after receiving a cyber threat a day or a few days earlier that her youngest brother and/or his pregnant wife would be murdered, Ms. Appel sent an e-mail to said brother warning him, *inter alia*, that he should be very careful when his wife goes to the hospital [to give birth]. On June 21, 2020, Ms. Appel's said brother notified her that his wife had given birth to a baby boy at Mount Sinai Hospital on June 19, 2020 and that his wife and the baby "are doing

10

great." On June 28, 2020, close to ten days after her nephew's birth, Ms. Appel's said brother notified her that his newborn son was still at the hospital, as a result of a health complication. Alarmed and concerned, on June 28, 2020 and June 29, 2020, Ms. Appel expressed concerns, via e-mail, that the baby may have been harmed at the hospital.

23. On June 30, 2020, just one day after Ms. Appel sent an e-mail to said brother suggesting that he immediately look into whether his son was a victim of foul play at Mount Sinai Hospital, plaintiff received a threatening visit from what appear to have been Mossad assassins, who arrived in a run-down van with the Mount Sinai Hospital logo, which, upon information and belief, was not a real Mount Sinai Hospital van. That same day, a very frightened Ms. Appel contacted defendants Dr. Kenneth Davis and Dr. David Reich and notified them of this threatening visit and requested to be notified immediately whether Mount Sinai Hospital sent these individuals and if so, for what purpose, or, alternatively, if these individuals were impersonating Mount Sinai Hospital personnel.

24. Within a very short time, Dr. Davis responded: "We will investigate immediately" and Dr. Reich responded:

> Dear Ms. Appel:
> Thank you for writing. This is very concerning and
> we will investigate the matter. Our team will be in
> touch soon.
> Sincerely,
> David Reich

Mr. Timothy Burgunder, who is, upon information and belief, the Director of Security at the Mount Sinai Health System and Ms. Patricia M. Lamb, who is, upon

11

information and belief, the Chief of Ancillary & Support Services and Senior VP at the Mount Sinai Health System were copied on Dr. Reich's e-mail.

25. Upon information and belief, Dr. Davis and/or Dr. Reich were subsequently bribed, monetarily or otherwise, by the Mossad to cover up the true nature of the threatening June 30, 2020 visit by individuals in a van with the Mount Sinai Hospital logo. Having received no update from anyone at the Mount Sinai Health System, on July 1, 2020, Ms. Appel wrote again to Drs. Davis and Reich requesting to be notified immediately if the van bearing the Mount Sinai Hospital logo and license plate number DBT1517, which came to her father's home on June 30, 2020 is an authorized vehicle of Mount Sinai Hospital and if so, the purpose of the threatening visit. Ms. Appel received no response from Dr. Davis. That same day, she received a response from Dr. Reich, clearly indicative of a cover-up in progress, which stated:

> Dear Ms. Appel:
> Thank you for writing to Dr. Davis and me. Our investigation is ongoing and will be completed shortly. A member of our team will attempt to reach you later today.
> Sincerely,
> David Reich

26. On July 2, 2020, two days after Ms. Appel first notified Drs. Davis and Reich of the threatening visit by individuals in a van bearing the Mount Sinai Hospital logo, Ms. Appel received the following e-mail sent on behalf of Mount Sinai Hospital, which was clearly designed to cover up criminal activity:

> Dear Ms. Appel,
>
> Drs. Reich and Davis informed me of the email you had sent to them about your concerns that there were people who were impersonating Mount Sinai personnel who came to your home. I oversee all of the behavioral health services for the Mount Sinai Health System, and I can confirm that we did indeed send out two clinicians to your home in our van. We received a referral from NYC Well that someone in the community had expressed concern about your wellbeing, and the job of this team is to accept such referrals from NYC Well. The team then goes out to make home visits to see if indeed the person needs help with their health and wellbeing.
>
> One of the team members, Sarah Kluge, has been trying to contact you by phone to further explain, and left a message with her phone number yesterday. Please feel free to call her so that she can explain in more detail.
>
> I want to assure you that these two people were indeed our own employees. We regret that you had a negative experience with this encounter, and please feel free to call our Patient Services Department at any time to further discuss – the number is 212.659.8990. My colleague, Ms. Erica Rubenstein, whom I' have cc'd, is the head of this Department.
>
> Thank you,
>
> Sabina Lim

27. There is no plausible reason why it should have taken the Mount Sinai Health System two days to conclude that the "Mount Sinai personnel" sent to Ms. Appel's father's home in a run-down fake-looking Mount Sinai Hospital van were its own employees. Moreover, contrary to Dr. Lim's false statement, Ms. Appel never

13

received any phone message from Ms. Sarah Kluge or anyone at the Mount Sinai Health System and notably, although Dr. Lim stated that Ms. Appel should feel free to call Ms. Kluge so that she can "explain in more detail," Dr. Lim declined to provide Ms. Kluge's phone number in her e-mail. Moreover, there is no plausible reason why the Mount Sinai Health System should have sent a wellness team to Ms. Appel's father's home to speak with Ms. Appel. Upon information and belief, the cover-up of the Mount Sinai Health System was conducted upon the instruction of the Mossad, acting on behalf of the State of Israel.

28. As a result of the assassination attempts on Ms. Appel and the cyber terrorism against her, for a lengthy period of time Ms. Appel did not go anywhere out of fear for her life.

**Defendant Antebi-Sharon Tried to Lure Ms. Appel Back to Israel by Implicitly Threatening Ms. Appel with the Loss of Her Home and her Personal Belongings in Israel if She Does Not Return to Israel Immediately**

29. On July 8, 2020, the plaintiffs in the Lawsuit made a motion to have Ms. Appel's answer to their complaint stricken, to be awarded a default judgment based upon their complaint alone, and to have their "attorney", Meir Amir Cohen, who is a documented criminal, appointed as a receiver who will have the authority to break into Ms. Appel's apartment and take over the apartment in order to have "repairs" performed there, all without Ms. Appel's consent or presence, because Ms. Appel did not schedule a visit of the "attorney" and the fake engineer in her apartment during the month of July, as she was ordered to by defendant Antebi-Sharon in a decision dated June 28, 2020.

30. On July 19, 2020, Ms. Appel filed a response to the aforementioned July 8, 2020 motion. In her response, Ms. Appel argued, *inter alia*, that despite the fact that the plaintiffs in the Lawsuit were required to submit an affidavit to support their motion, they declined to do so and the motion should be denied on those grounds alone.

31. Ms. Appel further argued that as a result of the assassination attempts committed against her, all of which were, upon information and belief, carried out by the Mossad, Ms. Appel cannot return to Israel now without significantly endangering her life. Ms. Appel further argued that the plaintiffs' expert is not an engineer as claimed by the plaintiffs but, rather a criminal who presents himself as an engineer in judicial proceedings in order to extort money on behalf of his clients and whose report was issued on behalf of a fictitious company. Ms. Appel argued that allowing this fake engineer into her home may endanger her life, especially when considering that Ms. Appel has very recently exposed to law enforcement authorities crimes committed by this fake engineer and that he may be involved in the assassination attempts against her.

32. Ms. Appel further argued that the attorney for the plaintiffs in the lawsuit, defendant Meir Amir Cohen, is a criminal and allowing him into Ms. Appel's home may significantly endanger her life, especially when considering that Ms. Appel has recently exposed to the authorities crimes committed by Meir Amir Cohen and that he may be involved in the assassination attempts against Ms. Appel.

33. Ms. Appel further explained that her entire immediate family resides in the United States and that she does not have anyone in Israel who she trusts to enter her home without her supervision and enable the visit of the "expert" and Meir Amir Cohen in her home. Ms. Appel further argued that having these two criminals enter her apartment, even without her presence, may endanger her security and her property.

34. In their reply papers, dated July 23, 2020, the plaintiffs in the Lawsuit, through defendant Meir Amir Cohen, did not deny that Meir Amir Cohen or their "expert" are involved in the assassination attempts against Ms. Appel. They argued, *inter alia*, that Ms. Appel lives in an imaginary world and suffers from severe hallucinations. According to defendant Meir Amir Cohen, the corruption of defendant Antebi-Sharon, the corruption of defendant Hayut, the assassination attempts on Ms. Appel, and Ms. Appel's claim that she suspects that Meir Amir Cohen was convicted of money laundering in a decision upheld by the Supreme Court of the State of Israel in Criminal Appeal No. 3395/06, Meir Cohen (represented by defendant Meir Amir Cohen) v. State of Israel, among other claims, are all hallucinations of Ms. Appel.

35. In a decision dated July 29, 2020, defendant Antebi-Sharon declined to address almost all of Ms. Appel's arguments and ruled, *inter alia*, that if Ms. Appel does not enable the visit of the plaintiff's "expert" in her apartment during the month of August, Ms. Appel's answer to the plaintiffs' complaint will be stricken, without any additional warning, and all that that entails.

36. In a second decision dated July 29, 2020, defendant Antebi-Sharon denied a motion filed by Ms. Appel on July 22, 2020 to dismiss the complaint in light of, *inter alia*, the fact that it is based in its entirety on a fraudulent report of the plaintiffs' "expert" who was presented in the complaint as an engineer but who is in fact not an engineer at all but, rather, a criminal who presents himself as an engineer in judicial proceedings in order to extort money for his clients. Ms. Appel further argued that allowing the plaintiffs' "expert" into her home may endanger her life, especially when considering that Ms. Appel has very recently exposed to law enforcement authorities crimes committed by this fake engineer and that he may be involved in the assassination attempts against her.

37. Defendant Antebi-Sharon denied Ms. Appel's motion to dismiss the complaint without any response of the plaintiffs to the motion, arguing that Ms. Appel's claims are mainly against the level of expertise and credibility of the "expert" and should be adjudicated during the proceeding and do not justify a summary dismissal of the complaint.

### Ms. Appel Has Exhausted Adequate and Available Remedies in Both the United States and Israel

38. Ms. Appel has exhausted adequate and available remedies in both the United States and Israel regarding the events complained of herein.

# FIRST CAUSE OF ACTION

**Attempted Extrajudicial Killing of Ms. Appel in Violation of the Torture Victim Protection Act** *by Defendants Hon. Esther Hayut, Yosef Meir Cohen, Hon. Yael Antebi-Sharon, Meir Amir Cohen, David Kazhdan, Alisa Rubin Peled, Dr. Kenneth Davis, and Dr. David Reich*

39. Ms. Appel realleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 38 of this Complaint as if fully set forth herein.

40. The attempted murder of Ms. Appel by, or with the assistance of, defendants Hon. Esther Hayut, Yosef Meir Cohen, Hon. Yael Antebi-Sharon, Meir Amir Cohen, David Kazhdan, Alisa Rubin Peled, Dr. Kenneth Davis, and Dr. David Reich constitutes an attempted extrajudicial killing as defined by the Torture Victim Protection Act.

41. The attempted extrajudicial killing of Ms. Appel was not authorized by any judgment and was not lawfully carried out under Israeli law or international law. Ms. Appel has not been charged with, convicted of, or sentenced for any crime.

42. The defendants' actions were, upon information and belief, committed under actual or apparent authority, or color of law, of the State of Israel.

43. As a result of the defendants' attempted extrajudicial killing of Ms. Appel in violation of the Terror Victim Protection Act, which has caused and is causing Ms. Appel severe pain and suffering, among other damage, Ms. Appel is entitled to damages in an amount to be determined at trial.

44. The defendants' actions were carried out deliberately and maliciously, with the intention to cause harm, and plaintiff is entitled to an award of punitive damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

**Torture of Ms. Appel in Violation of the Torture Victim Protection Act** *by Defendants Hon. Esther Hayut, Yosef Meir Cohen, Hon. Yael Antebi-Sharon, Meir Amir Cohen, David Kazhdan, Alisa Rubin Peled, Dr. Kenneth Davis, and Dr. David Reich*

45. Ms. Appel realleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 38 of this Complaint as if fully set forth herein.

46. The torture of Ms. Appel committed by, or with the assistance of, defendants Hon. Esther Hayut, Yosef Meir Cohen, Hon. Yael Antebi-Sharon, Meir Amir Cohen, David Kazhdan, Alusa Rubin Peled, Dr. Kenneth Davis, and Dr. David Reich constitutes torture as defined by the Torture Victim Protection Act.

47. The defendants' actions were, upon information and belief, committed under actual or apparent authority, or color of law, of the State of Israel.

48. By virtue of their positions and/or their actions, the defendants exercised custody or physical control over Ms. Appel at all relevant times.

49. The defendants, through their torture of Ms. Appel in violation of the Terror Victim Protection Act, inflicted severe and prolonged pain and suffering on Ms. Appel for the purpose of punishing Ms. Appel for exposing corruption and/or for the purpose of intimidating or coercing Ms. Appel into silence and/or for the purpose of discrediting Ms. Appel.

50. As a result of the defendants' torture of Ms. Appel in violation of the Terror Victim Protection Act, Ms. Appel is entitled to damages in an amount to be determined at trial.

51. The defendants' actions were carried out deliberately and maliciously, with the intention to cause harm, and plaintiff is entitled to an award of punitive damages in an amount to be determined at trial.

## JUDGMENT DEMANDED

WHEREFORE, Ms. Appel demands judgment as follows:

a. awarding Ms. Appel compensatory damages in an amount to be determined at trial for all injuries suffered by Ms. Appel as a result of the defendants' attempted extrajudicial killing of Ms. Appel and as a result of the defendants' torture of Ms. Appel, all in violation of the Torture Victim Protection Act;

b. awarding Ms. Appel punitive damages in an amount to be determined at trial;

c. awarding Ms. Appel prejudgment interest as provided by law; and

d. awarding such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         August 10, 2020

RONIT D. APPEL

S/ Ronit D. Appel
Ronit D. Appel, Esq. (RA 8950)
322 West 78th Street
New York, NY 10024
(347) 387-6100
ronitappel@gmail.com
*Plaintiff and Attorney for Plaintiff*