**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Ronit D. Appel,

    *Plaintiff*,                            Case No. 1:20-cv-06265 (JPC)

    -against-

Hon. Esther Hayut, Yosef Meir Cohen, Hon. Yael Antebi-Sharon, Meir Amir Cohen, David Kazhdan, Alisa Rubin Peled, Dr. Kenneth Davis, and Dr. David Reich,

    *Defendants*

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO RECOVER ATTORNEYS' FEES AND COSTS**
**BY DEFENDANT DAVID KAZHDAN**

# TABLE OF CONTENTS

STATEMENT OF FACTS ........................................................................................................... 2
   Ms. Appel files her frivolous Complaint ................................................................................. 2
   Ms. Appel moves for default .................................................................................................... 2
   Kazhdan moves to vacate the default and to dismiss the case ................................................. 3
   Daniel Kazhdan spends significant time and money addressing Ms. Appel's frivolous allegations ........ 3
   Kazhdan serves Ms. Appel with a Rule 11 notice .................................................................... 4
   The Court's dismisses the Complaint ...................................................................................... 4
LEGAL ARGUMENTS ............................................................................................................... 5
   **I.**   **This motion for sanctions is timely** ............................................................................... 5
   **II.**   **Sanctions are warranted** ................................................................................................ 6
      a.   **28 U.S.C. § 1927 and the Court's inherent powers** ................................................... 6
      b.   **Rule 11** ........................................................................................................................ 8
   **III.**   **Amount of Sanctions** ..................................................................................................... 9
**CONCLUSION** ............................................................................................................................ 11

Defendant David Kazhdan ("Kazhdan") is a retired Israeli professor whom Plaintiff Ronit Appel dragged into court by asserting a claim under the Torture Victim Protection Act (TVPA) alleging "a widespread conspiracy on behalf of the State of Israel to murder her." Dkt. 175 at 19. She ultimately sought $120 million in damages. Dkt. 62. The Court ultimately found that Ms. Appel's "Complaint does not allege any facts" to support essential elements of her allegations against Kazhdan—including his involvement in any conspiracy. *Id.*

Since filing her Complaint, Ms. Appel has asserted what the Court found to be "frivolous" criminal allegations against almost everyone with whom Ms. Appel has come into contact. She asked the Court to initiate criminal proceedings against Kazhdan and his attorney. *Id.* at 21. More recently, Ms. Appel even alleged that the Court somehow "colluded," and she has since filed a separate lawsuit against the Honorable Judge Cronan. Dkt. 176; *Appel v. Cronan*, No. 21-cv-6101 (S.D.N.Y.). In granting Kazhdan's motion to dismiss, the Court found that all of Ms. Appel's claims were meritless.

Notwithstanding the patent ridiculousness of Ms. Appel's allegations, Kazhdan was forced to deal with them (especially given the hundred-plus million dollars that Ms. Appel was seeking). As a result, Kazhdan retained his son, Daniel Kazhdan, as an attorney to defend him. Daniel Kazhdan had to spend many hours reviewing Ms. Appel's various filings and researching the relevant law before drafting and filing responses. Because Ms. Appel's claims are so meritless and because Ms. Appel's method of conducting this litigation was so unreasonable and vexatious, Kazhdan seeks the extraordinary relief of sanctions.

## STATEMENT OF FACTS

a. <u>Ms. Appel files her frivolous Complaint</u>

Ms. Appel's Complaint is replete with fantastical allegations, but, as this Court has explained, the Complaint is devoid of "any facts" to support them. Dkt. 175 at 19. According to the Complaint, Ms. Appel "exposed massive well-documented corruption of the Supreme Court of the State of Israel," and, as a result, she claims to have been the victim of multiple assassination attempts. Dkt. 1 ¶ 1. While offering no documents to support this "well-documented" allegation, Ms. Appel has sued numerous people, including the Chief Justice of the Israeli Supreme Court, the former director of the Mossad, and Kazhdan, based on the allegations. *See id.* ¶¶ 2, 3, 6. For her trouble, she sought $120 million from Kazhdan alone. Dkt. 62-1 ¶ 6.

b. <u>Ms. Appel moves for default</u>

Kazhdan initially assumed that a piece of international mail containing a complaint that asserted such absurd facts would require no response. When he mentioned it to Daniel Kazhdan (the undersigned), Daniel Kazhdan did not realize that Kazhdan had received any form of service, and he believed that proper international service in Israel required more than mere postal service. As this Court has recognized, this is the view of the only circuit court to address the issue. *See* Dkt. 56 at 2 (citing *Brockmeyer v. May*, 383 F.3d 798, 806 (9th Cir. 2004)). However, the Court concluded that international mail was sufficient for service and allowed Ms. Appel to move for entry of default against Kazhdan. Dkt. 56.

2

c. Kazhdan moves to vacate the default and to dismiss the case

Once the Court ruled that Ms. Appel's service was proper, Daniel Kazhdan moved promptly to be admitted *pro hac vice*, and Kazhdan moved to vacate the default. *See* Dkt. 68, 81. Ms. Appel, however, insisted on pressing her litigation further and opposed both motions. *See* Dkt. 70, 96, 97. Kazhdan did not need to respond to the opposition to his *pro hac vice* admission because Court quickly granted it, *see* Dkt. 71, but Kazhdan was forced to reply to further support his motion to vacate the default. *See* Dkt. 118. Ms. Appel doubled down and sought criminal sanctions against both defendant Kazhdan and his attorney, Daniel Kazhdan, and Kazhdan was forced to reply to this as well. Dkt. 119, 122. Kazhdan then moved to dismiss the Complaint. *See* 95. Ms. Appel opposed this as well, Dkt. 138, 139, and Kazhdan was forced to reply to this, too. Dkt. 143.

d. Daniel Kazhdan spent significant time and money addressing Ms. Appel's frivolous allegations

Daniel Kazhdan's work on Kazhdan's behalf took time and money. Daniel Kazhdan spent more than 60 hours: reviewing the 150 filings in the case, researching the law, and drafting responses and motions to deal with Ms. Appel's frivolous allegations and unreasonable and vexatious litigation tactics. *See* Ex. B. Separately, Daniel Kazhdan spent $225 so that he could be admitted *pro hac vice*.[1] *See* Ex. B. Daniel Kazhdan agreed not to charge Kazhdan unless Kazhdan could recoup attorneys' fees through sanctions against Ms. Appel.

---

[1] $25 for the certificate of good standing required for the $200 *pro hac vice* motion.

3

e. <u>Kazhdan serves Ms. Appel with a Rule 11 notice</u>

Because the Complaint was frivolous and Ms. Appel's conduct in pursuing the litigation was unreasonable, on January 15, 2021, Kazhdan sent Ms. Appel a Rule 11 letter. Ex. A. The letter explained that there was no subject matter or personal jurisdiction over Kazhdan, the Complaint failed to state a claim upon which relief could be granted, and the Complaint was sanctionable. Ex. A. Rather than withdraw her Complaint, Ms. Appel again asked the Court to institute criminal proceedings. Dkt. 127. Kazhdan replied to this as well. Dkt. 129.

f. <u>The Court's dismisses the Complaint</u>

On June 30, 2021, the Court granted Kazhdan's motion to vacate the default and to dismiss the case. Dkt. 175. The Court noted various fatal deficiencies with Ms. Appel's Complaint. *Id.* Among its many deficiencies:

(1) The Complaint contained only "vague, conclusory allegations" of torture. *Id.* at 15.

(2) The Complaint "d[id] not allege any facts" suggesting that Kazhdan somehow worked with the Mossad or Israeli officials. *Id.* at 19. There were merely "[c]onclusory allegations of participation in a conspiracy." *Id.*

(3) Ms. Appel's various requests that Kazhdan and his attorney be criminally sanctioned were simply "frivolous." *Id.* at 19, 21.

g. <u>The Court allows Kazhdan to move for sanctions</u>

The Court previously ruled that "no additional motions, including letter motions, may be made without leave of Court until further notice." Dkt. 134. On July 19, 2021, Kazhdan sought leave to file for sanctions, Dkt. 178. Ms. Appel

4

opposed arguing that the Complaint was "well-founded" and that Judge Cronan was involved in "severe corruption." Dkt. 179. The Court allowed Kazhdan to move for sanctions, but it wrote:

> Kazhdan may file a motion on the docket "if the challenged paper, claim, defense, contention, or denial" is not "withdrawn or appropriately corrected within 21 days after service." Fed. R. Civ. P. 11(c)(2). However, the Court emphasizes that it has already granted Kazhdan's motions to vacate the default and to dismiss, and no motion for reconsideration has been filed.

Dkt. 180.

## LEGAL ARGUMENTS[2]

Kazhdan moves, pursuant to this Court's inherent powers, 28 U.S.C. § 1927, and Federal Rule of Civil Procedure 11, for an award of costs and for the attorneys' fees Daniel Kazhdan spent defending this action. Ms. Appel's action was absurd and meritless, and the way she conducted this case only increased the cost of the litigation.

### II.     This motion for sanctions is timely

In Docket 180, the Court noted that Federal Rule of Civil Procedure 11 requires that Kazhdan first serve Ms. Appel with a Rule 11 motion and then give her 21 days to cure before moving for sanctions. Here, Kazhdan served his Rule 11 motion on January 15, 2021, Ex. A, but Ms. Appel refused to withdraw her

---

[2] This memorandum borrows heavily from a similar memorandum in support of sanctions that another defendant successfully filed against Ms. Appel, the plaintiff here, based on a lawsuit she filed several years ago. *See* Memo. of Law in Support of Motion to Recover Attorneys' Fees and Costs by Defendants Avant Garde and Sergei Goloubenko, *Appel v. Schoeman Updike Kaufman, Stern & Ascher LLP*, No. 1:14-cv-2065 (AJN), ECF No. 265 (S.D.N.Y. Dec. 15, 2014).

5

Complaint for the next 21 days—and beyond. The case was resolved, to the extent it has been, only a half a year later, when the Court dismissed Ms. Appel's Complaint. Kazhdan has fulfilled his requirements under Rule 11.

### III.  Sanctions are warranted

#### a. 28 U.S.C. § 1927 and the Court's inherent powers

It is well-settled that "in narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765 (1980); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 45, 47 (1991) (finding that sanctioning scheme of statutes and rules does not displace courts' inherent power to impose sanctions or attorneys' fees for bad-faith conduct in litigation). In addition, under 28 U.S.C. § 1927, courts may require an attorney to pay another party's attorneys' fees where counsel "multiplies the proceedings in any case unreasonably and vexatiously." Though *pro se*, as a New York-licensed attorney, Ms. Appel is still subject in this lawsuit to the ethical boundaries to which all attorneys must adhere in litigation. *See Sassower v. Field*, 973 F.2d 75, 80 (2d Cir. 1992) (finding sanctions are available against a party who, though acting *pro se*, was a lawyer); *Kim v. Kimm*, 884 F.3d 98, 106 n.2 (2d Cir. 2018) (citing *Sassower*).

The touchstone of these sanctioning mechanisms is the attorney's bad faith in making frivolous claims or vexatiously multiplying the proceedings. *ACLI Government Securities, Inc. v. Rhoades*, 907 F.Supp. 66, 68 (S.D.N.Y. 1995) (under both inherent power and 28 U.S.C. § 1927, there must be a clear showing

and factual finding of bad faith (citing *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir.1986)). Here, the bad faith is apparent.

Ms. Appel easily should have recognized that there are no plausible TVPA claims against Defendant Kazhdan. As Kazhdan explained in both his Rule 11 letter and in his motion to dismiss, "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Ms. Appel alleged that Kazhdan violated the Torture Victim Protection Act of 1991 by colluding or conspiring with the Mossad and other individuals in Israel in a failed attempt to assassinate and torture her. The Complaint's only specific factual allegation concerning Kazhdan was that he was substituted in place of his deceased mother in a lawsuit in an Israeli court relating to Ms. Appel's apartment. The claims against Kazhdan were based entirely upon the ungrounded speculation from this fact: by means of his lawsuit, Kazhdan "was working with and/or aiding and abetting the Mossad in its infliction of torture on Ms. Appel and in its attempts to assassinate Ms. Appel" because the lawsuit might lead to Ms. Appel's return to Israel, where the State of Israel might murder her. *See* Compl. ¶¶ 6, 13-28. Broad, speculative, and conclusory allegations like these are obviously insufficient.

In filing this litigation, Ms. Appel abdicated her ethical duties to refrain from such conduct in litigation, and the inescapable conclusion is that she did so in bad faith. There simply can be no other explanation for her conduct of dragging a truly

7

innocent party who has no connection to New York into a foreign country, which, predictably, forced Kazhdan's attorney (Daniel Kazhdan) to spend dozens of attorney hours defending Kazhdan. Ms. Appel's suit here was an egregious abuse of the judicial system, apparently to maximize a lawsuit and exact revenge for an Israeli lawsuit in which Kazhdan was vindicated. That she went so far as to oppose Daniel Kazhdan's motion for *pro hac vice* admission only further confirms Ms. Appel's bad faith.

### b. Rule 11

Federal Rule of Civil Procedure 11(b) provides:

> (b) **Representations to the Court**. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Ms. Appel signed her Complaint and numerous other documents as part of her suit against Kazhdan in particular. *See* Dkt. 1, 48, 58, 62, 69, 70, 74, 119. Each of these documents was premised on factually unfounded allegations and needlessly increased the cost of a litigation that was baseless in the first place.

8

*First*, none of Ms. Appel's claims against Kazhdan were "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." *See* Fed. R. Civ. P. 11(b)(2). As set out above, in Kazhdan's Motion to Dismiss, Dkt. 95, and in the Court's decision, Dkt. 175, Plaintiff has asserted no facts that have any bearing on Kazhdan's putative liability.

*Second*, Ms. Appel's fantastical damages claims ($120 million) are equally ungrounded in any form of factual or economic reality. Such an "outrageous" figure only adds to the unreasonableness of this case. *See Appel*, 2015 WL 13654007, at *33.

*Third*, both what Ms. Appel alleged in the Complaint itself as well as Ms. Appel's insistence on opposing nearly every motion—up to and including Daniel Kazhdan's motion for *pro hac vice*—confirms that Ms. Appel was conducting this litigation for the improper purpose of "harass[ing], caus[ing] unnecessary delay, [and] needlessly increase[ing] the cost of litigation." *See* Fed. R. Civ. P. 11(b)(1). It seems Ms. Appel was upset about an Israeli litigation, and the only reasonable conclusion is that she brought this suit to harass Kazhdan.

Ms. Appel should be held responsible for these numerous violations of Rule 11.

### IV.   Amount of Sanctions

While she is *pro se*, Ms. Appel is no fragile litigant, and this is not the first time she has brought frivolous litigations against innocent defendants. The last time she did so, the innocent defendant spent nearly $25,000 defending against

9

Ms. Appel's Complaint. *See Appel v. Schoeman Updike Kaufman Stern & Ascher L.L.P.*, 2015 WL 13654007, at *31 (S.D.N.Y. Mar. 26, 2015). The court in that case hoped that a "significantly reduced sanction" of $5,000 would be sufficient to serve as a deterrent, but, as this case shows, the court was wrong. The repeated sanctionable conduct is relevant in determining whether and how much to sanction. *See Guangqing Lin v. Teng Fei Rest. Grp.*, No. 17CV1774 (DF), 2020 WL 264407, at *4 (S.D.N.Y. Jan. 17, 2020); *Progressive Emu Inc. v. Nutrition & Fitness Inc.*, 785 F. App'x 622, 632 n.15 (11th Cir. 2019)

Where "all of a litigant's conduct is deemed sanctionable," a Court can look at the entirety of the case and is not required to address "discrete occurrences" individually. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 51 (1991). Here, Ms. Appel should be sanctioned for the full cost that Daniel Kazhdan spent. That is, she should have to pay the $225 Daniel Kazhdan spent on being admitted to the bar plus the value of the 66.5 hours Daniel Kazhdan spent on representing Kazhdan. While Daniel Kazhdan's day job is as a government attorney—who does not bill by the hour—that does not inure to Ms. Appel's benefit. *See NLRB v. Loc. 3, Int'l Bhd. of Elec. Workers*, 471 F.3d 399, 406-07 (2d Cir. 2006); *Davis v. D.C. Child & Fam. Servs. Agency*, 304 F.R.D. 51, 63 (D.D.C. 2014) (citing cases). Instead, Ms. Appel should have to pay based on the "prevailing rate." *See Loc. 3*, 471 F.3d at 407. According to the *Laffey* matrix, an attorney with Daniel Kazhdan's experience was entitled to $372/hour in 2020. *See* https://www.justice.gov/usao-dc/page/file/1305941/download. Thus, Ms. Appel should be sanctioned 66.5 hours * $372/hour + $225 = $24,963.

10

## CONCLUSION

Ms. Appel had no business bringing Kazhdan into this case. Her allegations do violence to Rule 11 and her other lawyerly obligations, and it should not be tolerated. Ms. Appel's "sue everybody" tactic has inflicted very real consequences on Kazhdan and his son. That is unfair; it is completely unacceptable; it would be unjust to permit Ms. Appel to get away with it. Kazhdan therefore respectfully urges this Court to hold Ms. Appel responsible for her frivolous conduct, including awarding Kazhdan his attorney's fees in defending the Complaint.

Dated: August __, 2021

Respectfully,

/s/ *Daniel Kazhdan*
Daniel Kazhdan
8506 Grubb Rd.,
Chevy Chase, MD 20815
(510) 418-0352
kazhdan.daniel@gmail.com
*Counsel for Defendant David Kazhdan*