```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
RONIT D. APPEL,                                                  :
                                                                 :
                                Plaintiff,                       :
                                                                 :     20 Civ. 6265 (JPC)
                -v-                                              :
                                                                 :     OPINION AND ORDER
HON. ESTER HAYUT et al.,                                         :
                                                                 :
                                Defendants.                      :
                                                                 :
-----------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

On June 30, 2021, the Court dismissed the Complaint in this action as to most Defendants, including David Kazhdan ("Kazhdan"). Dkt. 175. On August 3, 2021, the Court dismissed the action as to the remaining Defendant, Dkt. 186, and thereby closed this case. On that same day, Kazhdan moved for sanctions, requesting an award of attorney's fees and costs against Plaintiff Ronit D. Appel ("Appel") pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the Court's inherent power to impose sanctions. While the Court agrees that Appel violated Rule 11(b) by filing a frivolous and legally unreasonable Complaint, it declines to impose sanctions for the reasons that follow. Kazhdan's motion therefore is denied.

## I.     Background

The Court assumes familiarity with Appel's allegations and the procedural history of this case, which are detailed in the Court's Opinions dated June 30, 2021, *see Appel v. Hayut*, No. 20 Civ. 6265 (JPC), 2021 WL 2689059 (S.D.N.Y. June 30, 2021) ("*Appel I*"), and August 3, 2021, *see Appel v. Hayut*, No. 20 Civ. 6265 (JPC), 2021 WL 3371038 (S.D.N.Y. Aug. 3, 2021). As relevant here, Appel, an attorney proceeding *pro se*, filed a Complaint on August 10, 2020, alleging

claims against Defendants, including Kazhdan, for attempted extrajudicial killing and torture in violation of the Torture Victim Protections Act, 28 U.S.C. § 1350 ("TVPA"). Dkt. 1 ("Compl."). Appel's allegations stem from what she considers to be a "fraudulent Israeli judicial proceeding" brought by two of her neighbors in October 2019 concerning her apartment in Israel (the "Israeli Proceeding"). *Id.* ¶ 13. After one of the plaintiffs in that proceeding passed away, that plaintiff's son, Kazhdan, was substituted in her place. *Id.* Appel's Complaint in this case alleged that, "[u]pon information and belief, the filing of the [Israeli Proceeding] was planned by David Kazhdan and his son Eli Kazhdan with the intention of fraudulently securing a very significant judgment against Ms. Appel which would force her to sell her penthouse apartment in Jerusalem so that it could be purchased by David Kazhdan." *Id.* The Complaint also alleged that, "[u]pon information and belief, David Kazhdan is working with and/or aiding and abetting the Mossad in its infliction of torture on Ms. Appel and in its attempts to assassinate Ms. Appel by, among other things, threatening Ms. Appel with the loss of her home and her personal belongings in Israel if she does not return to Israel immediately." *Id.* ¶ 6.

After Kazhdan failed to respond to the Complaint or otherwise appear in this action, Appel obtained a certificate of default on December 8, 2020, Dkt. 60, and moved for default judgment on that same day, Dkt. 62. Three days later, on December 11, 2022, Kazhdan, represented by his son, Daniel Kazhdan,[1] appeared in this action. Dkt. 73. On December 22, 2020, Kazhdan moved to set aside the entry of default, Dkt. 81, and he subsequently moved to dismiss the Complaint on January 5, 2021, Dkt. 95.[2] Ten days after filing his motion to dismiss, on January 15, 2021,

---

[1] As reflected on the ECF docket for this case, Daniel Kazhdan appears to be employed at the United States Patent and Trademark Office, an agency in the United States Department of Commerce.

[2] Over the course of litigation, Appel opposed Daniel Kazhdan's motion to appear *pro hac vice*, Dkt. 69, opposed Kazhdan's request for a pre-motion conference to seek leave to move to set

Kazhdan served on Appel via mail and email a letter and a Notice of Motion for Sanctions under Rule 11. Dkt. 188, Exh. 3. The letter advised that Kazhdan intended to "seek sanctions against [Appel] under Federal Rule of Civil Procedure 11 for filing the Complaint and pursuing this case" because Appel's allegations "have no factual or legal basis." *Id.* at 2. The letter also advised that Kazhdan would "seek appropriate sanctions, including reasonable expenses such as attorney's fees, against [Appel] . . . if [Appel] do[es] not withdraw the Complaint within twenty-one (21) days." *Id.* at 4. Appel, however, did not withdraw the Complaint within the twenty-one-day period or at any point during the litigation. On June 30, 2021, the Court in *Appel I*, as relevant here, set aside the entry of default against Kazhdan and granted his motion to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Court found that Appel failed to state a claim under the TVPA, *Appel I*, 2021 WL 2689059, at *8-11, and that her requests for commencement of criminal proceedings against Kazhdan and Daniel Kazhdan were "frivolous and without a basis in fact or law," *id*. at *11.

On August 3, 2021, Kazhdan moved for sanctions, pursuant to Rule 11, 28 U.S.C. § 1927, and the Court's inherent power, seeking an award of attorney's fees and costs in the amount of $24,963. Dkt. 187, Exh. 1 ("Motion"). Kazhdan argues that monetary sanctions are appropriate because "Ms. Appel's action was absurd and meritless, and the way she conducted this case only increased the cost of litigation." *Id.* at 5. Kazhdan contends that his counsel spent approximately 66.5 hours "reviewing the 150 filings in the case, researching the law, and drafting responses and motions to deal with Ms. Appel's frivolous allegations and unreasonable and vexatious litigation

---

aside entry of default against him and to file a motion to dismiss, Dkt. 70, and requested a pre-motion conference for the purpose of filing a motion, pursuant to 18 U.S.C. § 401(1) and Federal Rule of Criminal Procedure 42(a), for the commencement of a criminal contempt proceeding against Kazhdan and Daniel Kazhdan, Dkt. 119.

3

tactics."[3]  *Id.* at 3.  On August 17, 2021, Appel opposed Kazhdan's Motion, Dkt. 189 ("Opposition"), and Kazhdan filed his reply on August 26, 2021, Dkt. 190.

## II.   Discussion

### A.  Rule 11

#### 1. Legal Standard

The Court begins by addressing Kazhdan's request for attorney's fees and costs pursuant to Rule 11.  Rule 11 requires an attorney to certify that (1) a pleading "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," (2) "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and (3) "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b).  Under Rule 11, a party must move for sanctions separately from any other motion.  Fed. R. Civ. P. 11(c)(2).  Prior to filing a Rule 11 motion with the court, the moving party must also serve the motion on the adverse party, after which it must give the adverse party twenty-one days to "withdraw[] or appropriately correct[]" "the challenged

---

[3] Because Kazhdan was represented by his son, Daniel Kazhdan, who is a federal government employee, "Daniel Kazhdan agreed not to charge Kazhdan unless Kazhdan could recoup attorneys' fees through sanctions against Ms. Appel."  Motion at 3.  The request for attorney's fees and costs consists of $225 for Daniel Kazhdan's certificate of good standing and *pro hac vice* application plus $24,738 in attorney's fees calculated at a rate of $372 per hour.  Dkt. 187, Exh. B.  Daniel Kazhdan determined that hourly rate based on the *Laffey* matrix, which is a table of hourly billing rates for attorneys in the Washington-Baltimore area that was found reasonable by the Honorable Aubrey E. Robinson, Jr., of the United States District Court for the District of Columbia in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 371 (D.D.C. 1983), *aff'd in part and rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984).  According to Kazhdan, the *Laffey* matrix provides that "an attorney with Daniel Kazhdan's experience was entitled to $372/hour in 2020."  Motion at 3.

paper, claim, defense, contention, or denial." *Id.* The requirement that the adverse party be afforded twenty-one days to remediate or withdraw the allegedly sanctionable filing is commonly known as Rule 11's safe harbor provision and is a "strict procedural requirement." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012).

Where a party has complied with the safe harbor requirements, sanctions are appropriate against the adverse party only upon "a showing of objective unreasonableness on the part of the attorney or client signing the papers." *ATSI Commc'ns v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009) (quoting *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir. 1997)); *see also Star Mark Mgmt., Inc.*, 682 F.3d at 177 ("The standard for triggering the award of fees under Rule 11 is objective unreasonableness and is not based on the subjective beliefs of the person making the statement." (quotations and modifications omitted)). A pleading "violates Rule 11 if it is frivolous, legally unreasonable, or factually without foundation, even though not signed in subjective bad faith." *Manhattan Enter. Grp., LLC v. Higgins*, No. 18 Civ. 6396 (VSB), 2019 WL 4601524, at *2 (S.D.N.Y. Sept. 22, 2019) (quotations omitted), *aff'd*, 816 F. App'x 512 (2d Cir. 2020). "[A]ll doubts must be resolved in favor of the signer of the pleading." *Gal v. Viacom Int'l, Inc.*, 403 F. Supp. 2d 294, 308 (S.D.N.Y. 2005).

Because sanctions imposed under Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated," Fed. R. Civ. P. 11(c)(4), "the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into the court as a penalty," Fed. R. Civ. P. 11(c) advisory committee's note to 1993 amendments; *see also Universitas Educ., LLC v. Nova Grp., Inc.*, 784 F.3d 99, 103 (2d Cir. 2015) ("The 1993 revision makes clear that the main purpose of Rule 11 is to deter improper behavior, not to compensate the victims of it or punish the offender." (quotations omitted)); *Arbor Hill Concerned*

*Citizens Neighborhood Ass'n v. Cnty. of Albany*, 369 F.3d 91, 98 (2d Cir. 2004) (observing that Rule 11 "is not a fee-shifting mechanism" (quotations omitted)); *but see* Fed. R. Civ. P. 11(c)(4) (sanctions imposed under Rule 11 "may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation"). Even if a court finds a violation of Rule 11, "[s]anctions may be—but need not be—imposed" because "sanctions under Rule 11 are discretionary, not mandatory." *Ipon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012); *see also Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004) ("The decision whether to impose a sanction for a Rule 11(b) violation is . . . committed to the district court's discretion."); *Microbot Med., Inc. v. Alliance Inv. Mgmt. Ltd.*, No. 19 Civ. 3782 (GBD) (RWL), 2020 WL 5755061, at *12 (S.D.N.Y. Aug. 18, 2020), *report and recommendation adopted*, 2020 WL 5600852 (S.D.N.Y. Sept. 17, 2020) (finding that the plaintiff's conduct was objectively unreasonable but declining to impose sanctions because "sanctions are reserved for 'extreme cases' and 'extraordinary circumstances'"); *Optimus Commc'ns v. MPG Assocs., Inc.*, 841 F. Supp. 2d 722, 726 (E.D.N.Y. 2012) (finding that the plaintiff's "claims and legal contentions are objectively unreasonable" but declining to impose sanctions because "the decision whether to impose sanctions is not mandatory, but rather is a matter for the court's discretion").

    **2. Analysis**

As an initial matter, the Court finds that Kazhdan has complied with the requirements under Rule 11's safe harbor with respect to Appel's allegations in the Complaint. Kazhdan served Appel with a letter and a Notice of Motion for Sanctions on January 15, 2021. Dkts. 187; 188, Exhs. 3, 4. In his January 15 letter, Kazhdan articulated various legal deficiencies in the Complaint and

requested that Appel withdraw the Complaint within 21 days; otherwise, Kazhdan would seek sanctions against Appel under Rule 11. Dkt. 187, Exh. A. Appel argues that Kazhdan has not complied with the procedural requirements under Rule 11 because she "[w]as [n]ever [s]erved [w]ith Kazhdan's Motion" since "the Notice of Motion that [Appel] received from Kazhdan in January of 2021 is *not the same* Notice of Motion that he filed with the Court when he moved for sanctions against [Appel] on August 3, 2021." Opposition at 5. The only differences in the Notices apparent to the Court are the date and the fact that the Notice previously served on Appel states, "Memorandum of Law in Support of Rule 11 Sanctions," Dkt. 188, Exh. 3 at 5, whereas the version later filed with the Court states, "Memorandum of Law in Support of Rule 11 *and other Sanctions*," Dkt. 187 (emphasis added). The Court observes no meaningful difference between the two motions. But even if the Court were to find that the two motions are meaningfully different, "the filed Rule 11 motion need not be exactly the same as the motion served on the opposing party," and, in fact, "[c]ourts have rejected a 'hypertechnical' reading of Rule 11 that would require the filed motion be identical in all respects to the motion served during the safe harbor period."[4] *In re Sun Prop. Consultants, Inc.*, No. 8-16-72267 (LAS), 2021 WL 3375831, at *6 (Bankr. E.D.N.Y. Aug. 2, 2021). In other words, "[s]o long as the Rule 11 motion filed with the court rests on

---

[4] Appel's reliance on *Cavanaugh v. Ford Motor, Co.*, No. 13 Civ. 4534 (JS) (SIL), 2015 WL 13745259 (E.D.N.Y. Dec. 4, 2015), is misplaced because the moving party in that case did not serve *any* motion on the plaintiffs prior to its filing of the Rule 11 sanctions motion and, instead, merely sent the plaintiffs "a letter to put Plaintiffs 'on notice of Ford Motor Company's intent to file a Rule 11 sanctions motion.'" *Id.* at *3; *see also Star Mark Mgmt., Inc.*, 682 F.3d at 175 ("An informal warning in the form of a letter without service of a separate Rule 11 motion is not sufficient to trigger the 21-day safe harbor period."). Likewise, *SortiumUSA, LLC v. Hunger*, No. 11 Civ. 1656 (BML), 2014 WL 1080765 (N.D. Tex. Mar. 18, 2014), is distinguishable because the moving party there filed a different memorandum of law than the one previously served on the plaintiff. *Id.* at *3. But the law in this Circuit is clear that "Rule 11(c)(2) requires only the service of '[a] motion' or '[t]he motion'" and "[i]t does not require the service of a memorandum of law or affidavits." *Star Mark Mgmt., Inc.*, 682 F.3d at 176.

substantially the same grounds set forth in the earlier notice of the motion given to the opposing party, the filed motion would comply with the safe harbor requirement." *Id.*

However, to the extent that Kazhdan asks that the Court impose sanctions under Rule 11 for filings that include Appel's opposition to Daniel Kazhdan's *pro hac vice* application, her opposition to Kazhdan's request for a pre-motion conference in advance of his motions to vacate default and to dismiss, and her request to file a motion for the Court to initiate criminal contempt proceedings against Kazhdan and his attorney, *see* Motion at 8 (listing these filings as "premised on factually unfounded allegations"), Kazhdan has not complied with Rule 11's safe harbor. Kazhdan's Rule 11 notice did not mention any of these grounds, and indeed was filed prior to Appel's request that the Court commence criminal contempt proceedings against Kazhdan and his attorney. Nor did Kazhdan supplement or amend his notice to Appel to request that she withdraw those filings. Thus, any application for Rule 11 sanctions against Appel based on filings other than her Complaint is denied as procedurally barred.[5]

Appel also argues that Kazhdan's Motion is procedurally time-barred because he "waited close to seven months, until after the Court closed this case, to move for sanctions." Opposition at 3. Although Appel is correct that Rule 11 motions "have been disallowed as untimely when filed after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission," *In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003), Appel misapprehends the law in this Circuit and the requirements under Rule 11. The portion of the Second Circuit's decision in *In re Pennie & Edmonds LLP* on which Appel

---

[5] To be clear, however, this is not to suggest that Appel's request that the Court initiate criminal contempt proceedings against Kazhdan and his attorney was objectively reasonable. It most certainly was not. As this Court found in *Appel I,* Appel's request for commencement of criminal proceedings against Kazhdan and Daniel Kazhdan was "frivolous and without a basis in fact or law." *Appel I,* 2021 WL 2689059, at *11.

8

relies explains that while "Rule 11 contains no explicit time limit for *serving* the motion" on the adverse party, such motion must "be served promptly after the inappropriate paper is filed" because the purpose of the "safe harbor" is to provide "the lawyer sought to be sanctioned . . . an opportunity to correct or withdraw the challenged submission." *Id.* at 89 & n.1 (emphasis added). The Second Circuit reasoned that such purpose would be defeated—and thus a motion for sanctions under Rule 11 should be denied—when the motion is not served on the adverse party in a timely manner. *Id.* Here, Kazhdan served the sanctions notice letter and Notice of Motion on Appel approximately one month after he appeared in the action and ten days after he moved to dismiss the Complaint. Furthermore, Appel had over five months—significantly longer than the twenty-one-day safe harbor period—to withdraw the Complaint before the Court dismissed it as to Kazhdan in *Appel I*. The Court, therefore, finds that Kazhdan's service of his motion on Appel was timely under Rule 11(c)(2). *See Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 526 (S.D.N.Y. 2017) ("[C]ourts may consider motions for sanctions after the case is dismissed pursuant to motion to dismiss."); *Lawson v. Rubin*, No. 17 Civ. 6404 (BMC), 2018 WL 4861380, at *2 (E.D.N.Y. Oct. 5, 2018) ("[I]t is—for obvious reasons—prudent and efficient for a defendant who thinks the claims against her are meritless to wait to move for sanctions under Rule 11 until after she has been dismissed or has prevailed.").

The Court also finds that Appel's filing of the Complaint was objectively unreasonable. As discussed in *Appel I*, the Complaint lacked sufficient factual basis to support a finding that Appel was a victim of torture or that Defendants were liable for the alleged torture under the TVPA. *See, e.g.*, *Appel I*, 2021 WL 2689059, at *8 ("The Complaint does not allege facts that would allow the Court to find any of the Defendants liable for torture under the TVPA."); *id.* ("[The Complaint] does not provide any details as to the contents of those alleged threats.").

Instead, the Complaint alleged conclusorily that Appel "has been the victim of assassination attempts as well as cyber terrorism, including . . . terrifying implicit cyber threats regarding the imminent murder of Ms. Appel and close family members of hers." Compl. ¶ 1. With respect to Kazhdan, the Complaint alleged that he "is working with and/or aiding and abetting the Mossad in its infliction of torture on Ms. Appel and in its attempts to assassinate Ms. Appel, by . . . implicitly threatening Ms. Appel with the loss of her home and her personal belongings in Israel if she does not return to Israel immediately, where she will . . . be murdered by the State of Israel." *Id.* ¶ 6. Such conclusory allegations, lacking any allegations of factual support, fell well short of stating a claim for relief and were objectively unreasonable.

Having concluded that Appel violated Rule 11(b), the Court turns to the question of whether sanctions should be imposed. As previously stated, even where a court concludes that Rule 11(b) has been violated, an award of sanctions is not mandatory. *See Ipon Collections LLC*, 698 F.3d at 63. Kazhdan argues that the Court should impose monetary sanctions in the amount of $24,963 for attorney's fees and costs. The Court declines to do so.

Foremost, the Court finds that imposition of a monetary sanction is unlikely to deter Appel from bringing frivolous claims in the future. *See* Fed. R. Civ. P. 11(c)(4) ("A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."). This is demonstrated by her litigation history. On March 25, 2015, the Honorable Alison J. Nathan imposed $5,000 in Rule 11 sanctions on Appel in another litigation she brought, citing the "utter frivolousness" of Appel's claims, "the amount of damage" she caused to the defendants, "her litigation behavior, her employment and salary history, and the need to deter similar *pro se* attorneys from using litigation as a tool for revenge or extortion." *Appel v. Schoeman Updike Kaufman Stern & Ascher L.L.P.*, No. 14 Civ. 2065 (AJN), 2015 WL

13654007, at *34 (S.D.N.Y. Mar. 26, 2015). This lawsuit—which also was frivolous—followed five years later. And during the pendency of this lawsuit, Appel brought a separate action against the undersigned, alleging that the Court had "'unconstitutionally silenc[ed]' her, thereby 'aiding and abetting' the attempts on her life in violation of the Torture Victim Protections Act." *Appel v. Cronan*, No. 21 Civ. 6101 (BMC), 2021 WL 3192962, at *1 (E.D.N.Y. July 28, 2021). The complaint in that case was "dismissed as frivolous." *Id.* at *2. Thus, the Court doubts that a further monetary sanction would achieve a deterrent effect on Appel. There may come a point when a filing injunction against Appel is appropriate, but the Court is not convinced we are there yet. *See Milltex Indus. Corp. v. Jacquard Lace Co., Ltd.*, 55 F.3d 34, 39 (2d Cir. 2000) (explaining that a court may prevent a party from filing pleadings only in "extraordinary circumstances, such as a demonstrated history of frivolous and vexatious litigation . . . or a failure to comply with sanctions imposed for such conduct" (quoting *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 652 (2d Cir. 1987) (alteration in original)).

      Moreover, the Court has already dismissed the Complaint in this action as to all Defendants, including Kazhdan. And although the Court recognizes the hardship associated with having to defend oneself against a suit in federal court, as Kazhdan himself acknowledges, his involvement in this action—"only a half a year"—was relatively short-lived. *See* Motion at 6. In fact, Kazhdan moved to dismiss the Complaint less than a month after he first appeared in this case. Nor did Kazhdan engage in any discovery before the Court dismissed the action. And while Kazhdan's memorandum of law in support of dismissal was persuasive, it was not a filing that should have consumed considerable time. *See* Dkt. 95, Exh. 1. It consisted of about six-and-one-half pages of text and at points incorporated arguments in support of dismissal raised by other

Defendants. *Id.* In short, with the Complaint now dismissed, the Court finds no reason to further prolong this litigation.

Accordingly, while Appel's filing of the Complaint was not objectively reasonable, Kazhdan's request for sanctions under Rule 11 is denied.

**B.  28 U.S.C. § 1927 and the Court's Inherent Power**

The Court turns next to Kazhdan's request for sanctions under section 1927 and the Court's inherent power. Under section 1927, a court may impose sanctions against an attorney when such attorney "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. "[A]n award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Wood v. Brosse U.S.A., Inc.*, 149 F.R.D. 44, 49 (S.D.N.Y. 1993). Although section 1927 expressly applies to attorneys, where a *pro se* litigant is a lawyer, such as the case here, section 1927 "applies to abusive tactics and bad faith conduct by that individual." *Sorenson v. Wolfson*, 170 F. Supp. 3d 622, 633 (S.D.N.Y 2016) (quotations omitted).

Courts also have an "inherent power" to sanction "the offending party and [her] attorney when it determines a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Agee v. Paramount Commc'ns, Inc.*, 114 F.3d 395, 398 (2d Cir. 1997). Such inherent power to sanction "derives from the fact that courts are 'vested by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.'" *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). "The Supreme Court has cautioned that because of the 'very potency' of a court's inherent power, it should be exercised 'with restraint

12

and discretion.'" *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991) (quoting *Chambers*, 501 U.S. at 44).

To impose sanctions under either section 1927 or the court's inherent authority, a district court must find clear evidence that "(1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, *i.e.*, motivated by improper purpose such as harassment or delay." *Schlaifer Nance & Co.*, 194 F.3d at 336; *see also Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009) (same); *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) (explaining that the "only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys . . . while an award made under the court's inherent power may be made against an attorney, a party, or both"). "A finding of bad faith, and a finding that conduct is without color or for an improper purpose, must be supported by a high degree of specificity in the factual findings." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009). Even where the standard is met, "[t]he Court has discretion to decide whether to impose sanctions under 28 U.S.C. § 1927 and its inherent authority." *Sorenson*, 170 F. Supp. 3d at 634; *see also Arclightz & Films Pvt. Ltd. v. Video Palace, Inc.*, No. 01 Civ. 10135 (SAS), 2003 WL 22434153, at *7 (S.D.N.Y. Oct. 24, 2003) (finding that "§ 1927 by its terms ('may be required') confides an award of fees against counsel to the Court's discretion"). In exercising its discretion, the Court "must take into account the financial circumstances of the plaintiff." *Sassover v. Field*, 973 F.2d 75, 81 (2d Cir. 1992).

"[A] claim is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." *Schlaifer Nance & Co.*, 194 F.3d at 337 (quotations omitted). The relevant inquiry is whether a reasonable attorney and a reasonable plaintiff "could have concluded that facts supporting the claim *might be established*, not whether

13

such facts actually *had been established*." *Id.* (quotations omitted). An action is taken in bad faith when it is "motivated by improper purposes such as harassment or delay." *Id.* at 336. "Bad faith may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." *Oliveri*, 803 F.2d at 1272 (quotations omitted). While "[b]ad faith can be inferred when the actions taken are . . . completely without merit," *id.* at 338 (quotations omitted), the Second Circuit has declined to hold "that a frivolous position may be equated with an improper purpose" as "[s]uch a simple equation would turn the two-part standard into a one-part standard." *Sierra Club v. U.S. Army Corps of Eng'rs*, 776 F.2d 383, 391 (2d Cir. 1985); *see also Eisemann v. Greene*, 204 F.3d 393, 397 (2d Cir. 2000) (reversing award of sanctions where "the Court's conclusory determination that [the plaintiff's] motion was filed in bad faith rested almost entirely on its lack of merit"). The Second Circuit has "interpreted the bad faith standard restrictively . . . '[t]o ensure . . . that fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims.'" *Id.* at 396 (quoting *Dow Chem. Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir. 1986)).

Here, the Court declines to award Kazhdan sanctions under section 1927 and the Court's inherent power because, although Appel's allegations in the Complaint and her request for the Court to initiate criminal proceedings against Kazhdan and his attorney may have been unfounded, Kazhdan has not demonstrated a clear and specific showing of bad faith by Appel. Kazhdan contends that "bad faith is apparent" because "Ms. Appel easily should have recognized that there are no plausible TVPA claims against" him and that "[t]he claims against Kazhdan were based entirely upon the ungrounded speculation" for which "the inescapable conclusion is that she did so in bad faith." Motion at 7. But Kazhdan's argument attempts to do exactly what the Second Circuit has declined to do: equate Appel's frivolous claims with an improper purpose.

14

Accordingly, Kazhdan's motion for sanctions under section 1927 and the Court's inherent power is denied.

### III. Conclusion

For the foregoing reasons, Kazhdan's motion for sanctions is denied. The Clerk of Court is respectfully directed to close the motion pending on Docket 187.

SO ORDERED.

Dated: January 25, 2022
New York, New York

_____
JOHN P. CRONAN
United States District Judge